## UNITED DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**MARIE BURKS, as Personal Representative
Of Rickey Mills, deceased and JACK MILLS**

   **Plaintiff,**

          **CASE NO.:  6:08-CV-1568-ORL-28GJK**

**vs.**

**KEVIN BEARY, as Sheriff of the Orange County Sheriff's Office
DEPUTY SHERIFF CHESTER PARKER and
DEPUTY SHERIFF BRIAN FIGUEROA**

   **Defendants.**

       /

## PLAINTIFF'S RESPONSE IN OPPOSITION AND MEMORANDUM OF LAW SUPPORT TO THE ORANGE COUNTY SHERIFF'S OFFICE MOTION FOR SUMMARY JUDGMENT

  Plaintiff, MARIE BURKS, as Personal Representative of Ricky Mills, deceased and JACK

MILLS, by and through her undersigned counsel and pursuant to Fed. R. Civ. P. 56 and Local Rule

3.01, files this, her Response in Opposition to the Orange County Sheriff's Office Motion for

Summary Judgment and states as follows:

## GENERAL FACTS1

  On June 14, 2005, Deputies Parker and Deputy Figueroa responded to a 911 call

from Mary Jones, in which Ms. Jones reported that Ricky Mills, a "mental patient",  may have a

knife and needed to be taken to Lakeside. (M. Jones @ 16; 17, ln. 10-13) Ms. Jones told 911that

"Ricky was not near any knives" and "he was separated from knives" and "he went back to his

---

1  It is indeed unfortunate that Defense Counsel would intentionally and purposely fail to file the deposition transcripts of Jack Mills (J. Mills), Mary Lou Jones (M. Jones)  and Jimmy Lee Jones (J. Jones). These depositions totally contradict Defendants' version of the facts and events, thus, this raises the question if Defendant was intentionally trying to mislead this Court.  Citations to depositions will be designated with the first initial  of

room". (M. Jones @ 41; Exhibit G of Defendants' Exhibits)  Nobody told Parker or Figueroa

Ricky Mills was "threatening to hurt his uncle".  Ricky Mills was a tenant at the residence.

When Parker and Figueroa arrived at the scene, they were met by Jack Mills, who informed them

Ricky Mills was in his room alone. (J. Mills @ 70) When they arrived, Figueroa and Parker were

told "Ricky threatened to get a knife, but did not have a knife. (C. Parker @ 9)  Jack Mills told

the deputies he didn't want them to "hurt or kill" Ricky he just need his medication. (J. Mills @

70-71) Thus, at that time, the deputies knew there was nobody in danger.

     Upon their arrival, Deputies Parker and Figueroa were informed that Ricky Mills had a

mental health condition and that he had gone into his bedroom (Jack Mills @ 70-72). The

deputies went to Ricky Mills' bedroom door and made several calls for Ricky Mills to exit his

room. Ricky Mills refused to open the bedroom door stating he "was in the bed" and "wasn't

coming out". (J. Mills @ 75-76) Figueroa and Parker were told Ricky wasn't being violent. (M.

Jones @ 18-19)

     Contrary to Defendants contentions, Ricky was not yelling, being aggressive, or being

"hostile", he merely stated he wanted to be left alone and wasn't coming out. (J. Mills  @ 75,76,

78; M. Jones @ 20)  That although the Orange County Sheriff's Office had a Crisis Intervention

Team (CIT) for these types of situations and there was sufficient time to call the CIT, according

to Parker, "CIT officers were not always available" and "it was not routine to call them". (C.

Parker @ 9) Nobody from the CIT arrived. (M. Jones @ 42 ) This was OCSO policy and

practice.

     However, shortly after refusing to open the door, Ricky Mills opened the bedroom door

---

deponent's name, full last name, @, and page number of deposition.

and was bent down in the doorway, stark naked, armed with a "little knife", with the blade pointing to the floor. (J. Mills @ 77, 78) Contrary to Defendants' comment that "Ricky Mills was looking at them with a crazed look in his eyes" when he opened the door, according to Jack Mills (who was 5 feet away), "Ricky was looking down at the floor". (J. Mills @ 78, ln. 1-3) The deputies were standing on either side of the door when Ricky Mills opened the door. The deputies were in arm's length and were carrying asp and pepper spray.  At that time, Ricky was tased multiple times by the Parker. The deputies never told Ricky to drop the knife before using the taser. (R. Mills @ 79, 82)

Ricky Mills never made any threatening movements towards any deputy; he never wielded the knife towards any deputy and he never stabbed at any deputy at any time, or anyone else, including when he opened the door. (J. Mills @ 130-131)

After Ricky was tased he fell forward and dropped the knife. (J. Mills @ 84, 85, 119) Although the deputies could have apprehended Ricky at that time, they did not (J. Mills @ 131) and he fled down the hall. (J. Mills @ 84, 85, 86).  Jack Mills was backing up trying to avoid Ricky and tripped. (J. Mills @ 90-93). As Ricky was moving towards Jack Mills (unarmed) he was shot multiple times by Parker and Figueroa. (J. Mills @ 94-96) At no time did Ricky Mills attack Jack Mills or anyone else the day he was killed by Parker and Figueroa.

The claim against the Orange County Sheriff Office is based on a custom, policy and practice of the arbitrary and capricious use of the taser on citizens and a custom, policy or practice of permitting the use of excessive force by Orange County Sheriff's Office deputies.

Additionally, the Orange County Sheriff Office failed to implement adequate polices and procedures which required deputies to call the Crisis Intervention Team when dealing with

3

emotionally distraught, mentally ill, or potentially suicidal citizens (like other agencies); and failed to implement adequate policies and procedures which required a CIT officer always be available.

## MEMORANDUM OF LAW AND ARGUMENT

### A. Standard for Summary Judgment

To be entitled to judgment as a matter of law, the Defendant must show Plaintiff failed to produce evidence such that a reasonable jury could not possibly find that the Orange County Sheriff's Office had/has a pattern or practice of widespread and persistent deputy abuse that a custom or policy of excessive force exist(ed). *Monell v. Dept. of Social Servs.,* 436 U.S. 658, 691 (1978); *Depew v. City of St. Mary's, Ga.,* 787 F.2d 1496 (11th Cir. 1986) During the summary judgment phase, all evidence and inferences drawn from the evidence must be in favor of the non-movant *Walker v. NationsBank of Florida, N.A.,* 53 F.3d 1548, 1555 (11th Cir.1995) and if Plaintiff presents evidence reasonable people, in the exercise of impartial judgment, might reach differing conclusions on, the Defendant's motion for summary judgment <u>must</u> be denied. *Priester v. City of Riviera Beach,* 208 F. 3d 919 (11th Cir.2000).

In *Beltram v. Shackleford, Farrior, et al.,* 725 F.Supp. 499, 500 (M.D.Fla.1989), this Court held, "This circuit clearly holds summary judgment should only be entered when the moving party has sustained its burden of showing the absence of a genuine issue as to <u>any</u> material fact when all the evidence is viewed in the light most favorable to the nonmoving party." The evidence of the non-movant is to be believed and all doubt as the existence of <u>any</u> genuine issue of material fact must be drawn in favor of the non-movant. *Adickes v. SH Kress & Co.,* 398 U.S. 144, 158-59 (1970); *Anderson v. Libby Lobby, Inc.,* 477 U.S. 242, 255 (1986).

### B. Plaintiff Has Produced An Abundance Of Complaints And Evidence Of

## Excessive Use Of Force To Defeat Summary Judgment As To her Fourth Amendment Monell Claim

In order to maintain her claim against the Orange County Sheriff's Office as the Personal Representative of the Ricky Mills,  Plaintiff is required to show the Orange County Sheriff's Office had a policy, custom or practice of permitting the arbitrary and capricious use of the taser on citizens or that there is a policy, custom or practice in failing to properly train with respect to the use of excessive force by demonstrating a pattern of deputy misconduct or abuse.2  *Monell v. Dept. of Social Serv. Of City of N.Y.,* 436 U.S. 658 (1978); *City of Canton v. Harris,* 489 U.S. 378 (1989) In order to show a pattern as to the use of excessive force by deputies of the Orange County Sheriff's Office, Plaintiffs are permitted, and have always been permitted to present evidence of other complaints of excessive force as well as the manner in which those complaints are being handled.

In this case, as Plaintiff has also claimed "the OCSO violated §1983 for its failure to properly supervise deputies under these situations and scenarios",  at the time of this incident, Parker and Figueroa were unsupervised. (Parker @ 19, 22) **In Defendant's Motion for Summary Judgment, Defendant has not set forth a single argument that Parker and Figueroa were being properly supervised during this incident.**  There were no supervisors when Parker and Figueroa arrived on the scene. There were no supervisors on the scene when Parker and Figueroa approached the door. There were no supervisors when Parker and Figueroa caused the situation to escalate. There were no supervisors when Parker and Figueroa shot and killed Ricky Mills.  Here, as admitted by Parker, it was the policy of the Orange County Sheriff Office to permit deputies to handle situations like this as he had "handled these types of calls all the time" (Parker @ 10). Thus, whether the OCSO properly trained its deputies on how to handle these types of situations, or properly supervised Parker and Figueroa at the time of this shooting is a question for a jury.

5

To prove § 1983 liability against a municipality based on a custom, plaintiff must show a widespread practice that, even if not authorized by written law or an expressed municipality policy, is so permanent and well settled as to be a custom or usage with force of law. *Brown v. City of Ft. Lauderdale,* 923 F.2d 1474 (11th Cir. 1991) In other words, a longstanding and widespread practice is deemed authorized by the policymaking officials because they must have known about it but failed to stop it. *Id.* at 1481.

In this case, the Plaintiff has provided this Court with an abundance of evidence of complaints of excessive force against Orange County Sheriff's Office deputies; Plaintiff has produced evidence that in a span of merely three (3) to four (4)  years, or from 2001-2005, Orange County Sheriff Office deputies used tasers on citizens over 1,000 times and that from 1999 to 2003, there were 182 excessive force complaints made against Orange County Sheriff's Office deputies, yet, only 1 was sustained and none have been founded.  Clearly, this overwhelming evidence is sufficient as a matter of law to establish the Sheriff's Office has a pattern, practice or policy of the arbitrary and capricious use of tasers and a pattern, practice or policy of using excessive force against citizens, or is sufficient to at least present the issue to a jury.

In *Fiacco v. City of Rensselear,* 783 F.2d 319, 328 (2nd Cir. 1986), the court held evidence of prior complaints was highly relevant on the issues of municipal and supervisory liability. The court found evidence of prior complaints and the city's manner of responding to them may support contentions that the city knew about allegations of police misconduct, but was deliberately indifferent in responding to them.

It must be noted that some of these complaints involved the actions of more than one deputy or in other words, the complainants alleged multiple Orange County Sheriff's Office deputies used

excessive force.  From 1995-1998, there were 87 complaints and merely 5 were sustained.  The number of complaints actually increased over time.  Thus, from 1995 to 2005, there have been approximately 294 excessive force complaints, yet, only 6 were sustained.

The complaints may support a claim of municipal and supervisory liability by showing that supervisory officials, despite their knowledge of charges against subordinate officials, failed to carry out their supervisory responsibilities. The court reasoned,

> **[t]he fact that none of the claims had yet been adjudicated in favor of the claimant was not material; if the City's efforts to evaluate the claims were so superficial as to suggest that its official attitude was one of indifference to the truth of the claim, such an attitude would bespeak an indifference to the truth of the claim, such an indifference to the rights asserted by those claim.** *Id.*

 In *Fiacco*, the complaints consisted of different types of claims of excessive force and misconduct, not one particular type as the Sheriff's Office has argued.  In this case, from 1999 to 2005 there are over 182 excessive force complaints, some of which involve multiple deputies. (See Docket No's: 27 (Exhibits A-K) and 36 (Exhibits A-B) of Jackson v. Kevin Beary, Case No.: 6:03-CV-881-ACC-KRS, Plaintiff's Composite Exhibits B-F of Plaintiff's Statement of Undisputed Facts)2  During this period of time, only once have the allegations of wrongdoing against a deputy been sustained.  Not once between 1999-2003 have an excessive force complaint against a deputy been founded.  Simply put, on each occasion, according to the Sheriff's Office the citizen is always lying and the deputy is always telling the truth. In fact, despite the overwhelming evidence that Parker and Figueroa used excessive force against Plaintiff, Ricky Mills, which includes a witness who observed Parker and Figueroa tase Plaintiff multiple times (although he was not threatening anyone at that time) and shoot Plaintiff while he was unarmed and naked. In fact, Jimmy Jones (another resident of the unit)

---

2  Since Defendant fails to produce or provide these documents to Plaintiff's Counsel and these documents  have already been filed in this Court in Jackson v. Beary, Case No.: 6:03-CV-881-ACC-KRS, Plaintiff refiles and

immediately opened his door after Ricky Mills was shot and he too testified there was no knife anywhere in the vicinity of Ricky's body. (J. Jones @ 30) According to Jones, after the shooting, he heard a bump against his door; he opened his door, and held it open for at least a minute and saw Ricky's body (J. Jones @ 23-27). The allegations were deemed unfounded and unstained.

In this case, the Orange County Sheriff's Office has filed self-serving affidavits (Margeson, Brown and Ogden) arguing that it promulgated rules and regulations to its deputies on the proper use of force and trained deputies on the proper use of force. In fact, these are the same affidavits OCSO filed in Jackson v. Beary, Case No.: 6:03-CV-881-ACC-KRS, and which OCSO file in every excessive force case.  Nevertheless, a city [municipality] is liable under section 1983 for excessive use of force by police officers where although city provided rules and regulations for the operation of police department those rules were violated on numerous occasions, to the knowledge of city, but city failed to rectify the situation and there were several incidents involving use of unreasonable and excessive force by police officers. *Depew v. City of St. Mary's, Ga., & Fowler*, 787 F.2d 1496 (11th Cir.1986).

The OCSO claims it has gone "to great lengths" to ensure deputies are properly trained, supervised and disciplined (when appropriate) in order to guard against the violation of the constitutional rights of citizens. The OCSO fails to realize that this is not the litmus test, and the test this Court should consider is whether the purported polices "enacted" and "promulgated" by the OCSO are sufficiently effective in preventing violations of the constitutional rights of citizens so as to prevent this question from being presented to a jury. Clearly, if hundreds of citizens of Orange County are being assaulted, tased, beaten, shot and killed by OCSO deputies annually, and claiming

---

incorporates these documents into this Response.

"excessive force", then, the "effectiveness" or "legitimacy" of these policies in are dispute and are jury questions.  *Owens v. City of Ft. Lauderdale,* 174 F.Supp.2d 1282, 1293-1294 (S.D. Fla.2001).

In *Depew*, the Eleventh Circuit Court Appeals affirmed a judgment by citizens for the excessive force by the City's officers. The Court held, to establish a policy or custom sufficient to hold a municipality liable under section 1983 for act of its employee it is generally necessary to show a persistent and widespread practice; moreover, actual constructive knowledge of must be attributed to the governing body of the municipality and, normally, random acts or insolated incidents are insufficient, although the custom need not receive formal approval. *Id*. at 1499.

In *Depew,* as in this case, the evidence revealed several incidents involving the use of unreasonable and excessive force by police officers.  Therefore, the city had knowledge of improper police conduct, but failed to take proper remedial action. *Id.* The continued failure of the city to prevent known constitutional violations by its police force is precisely the type of informal policy or custom that is actionable under section 1983. *Id. See Herrera v. Valentine*, 653 F.2d 1220, 1224 (8th Cir.1981).

The fact that the Orange County Sheriff's Office always exonerates is deputies is not dispositive of the legitimacy of the multitude of citizens complaints Plaintiff has produced in this case.  Contrarily, it demonstrates the Sheriff's Office "deliberate indifference" to the rights and complaints of citizens of Orange County. *Fiacco*, *supra* at 328. *See also Torres v. Kuzniasz,* 936 F. Supp. 1201, 1211 (D.N.J.1996)("supervisory opinions and responses to civilian complaints are highly relevant to proving 1983 municipality claim based upon entity's alleged failure to respond adequately to complaints of police misconduct") To this end, deliberate indifference can be shown by "continued adherence to an approach that [policymakers] know or should know has failed to

prevent tortuous conduct" or by "the existence of a pattern of tortuous conduct by inadequately trained employees." *Board of County Comm'rs v. Brown,* 520 U.S. 397, 404, 407-08 (1997).

For instance, as to Plaintiff's claim of misconduct with respect to being tased repeatedly and shot and killed while unarmed, in Plaintiff's Composite Exhibits B-F of Docket No.: 27 and 36 of Jackson, from 1999-2005, citizens have made over 182 complaints, including but not exhaustive of having their arms twisted while subdued; of being hit in the face with Asps; of being choked; of being punched while subdued; of being struck in the face while subdued; of being slammed to the ground; of being kicked in the ribs while subdued; of being slammed against patrol cars; of being pepper sprayed while subdued; of being kicked in the stomach while subdued; and of being kicked about their bodies while subdued.

In fact, in 2002, less than three (3) years of the subject incident, there were approximately 43 complaints of excessive force by citizens of misconduct, yet, the Orange County Sheriff's Office took no remedial measures insofar as excessive force complaints persisted after Plaintiff's incident and into 2005, in fact, there were a multitude of additional complaints, lawsuits and claims of excessive force for 2003 through 2007 (See Exhibit "A" of Plaintiff's Notice of Filing) and no deputy was ever disciplined. *Grandstaff v. City of Borger,* 767 F.2d 161 (5th Cir.1985)(Municipal liability can be established by "subsequent acts" and subsequent acceptance of dangerous recklessness by city policymakers tend to prove policymaker's preexisting disposition).

In *Owens v. City of Ft. Lauderdale,* 174 F.Supp.2d 1282 (S.D. Fla.2001), a case relied upon by Defendant, the plaintiff died as a result of a choke hold deployed by an officer. Plaintiff produced only six (6) incidents of misconduct and there had only been two previous similar incidents reported, and the reports were unsubstantiated, precluding finding of widespread abuse putting city on notice

10

of need for neck-restraint policy, and death was not such a highly predictable consequence of lack of training as to render need for training obvious without prior abuses. *Id.* However, the *Owens* Court still held,

> **Inadequacy of police officer training may serve as basis of city's liability under § 1983 where failure to train amounts to deliberate indifference to rights of persons with whom police come into contact, i.e., either where need for particular type of training is obvious because officials face clear constitutional duties in recurrent situations, or where need for more or better training is obvious because of constitutional violations exists such that municipality knows or should know that corrective measures are need. *Id.* at 1293-1294.**

 In this case, plaintiff has produced a multitude of complaints of excessive force while citizens were already subdued, including at least 25 incidents where citizens were kicked, some claimed their teeth were kicked out, or had a foot or knee forcibly placed on their neck or back. (See Plaintiff's Composite Exhibits B-F of Dkt 27 of Jackson  and Exhibit "A" of Notice of Filing) Undoubtedly, Plaintiff being tased multiple time and being shot multiple times and killed was a "highly predictable consequence of a lack of or inadequate training" of deputies, especially considering other citizens have made similar complaints and the Orange County Sheriff Office had policy in place where the CIT was not called to these situations and where CIT officers were seldom unavailable.  Clearly, plaintiff has produced sufficient evidence, and created factual issues for a jury to determine whether the Orange County Sheriff's Office has a pattern, practice or custom of excessive force; whether Parker and Figueroa were properly trained to use other less intrusive means which were readily available to them besides shooting Plaintiff to death (the deputies had pepper spray and asps and Ricky was in arm's length of them when he opened the door), and rather the OCSO properly trained its deputies with respect to using the CIT; or had proper and adequate measures to activate the CIT,

11

so as to survive summary judgment.

For instance, in *Mercado v. City of Orlando,* 407 F.3d 1152, 1158 (11th Cir. 2005), the Eleventh Circuit found instructive and important in an excessive force case involving the shooting of mentally distraught and potentially suicidal person that "the officers were also aware that alternative actions, such as utilizing a crisis negotiation team, were available means". "[T]his is especially true in light of the fact that Mercado had not made any threatening moves towards himself or the officers". *Id.* 1158. Here, it is undisputed that Ricky was not threatening any deputy, nor had made any threatening moves towards any deputy or himself when he was initially tased, and there are heated and highly material facts in dispute if Ricky was armed and threatening or attacking Jack Mills (according to Jack Mills he was not). Thus, the training, policy, procedures, and practices relative to the activation of the CIT or training under these types of scenarios are jury questions.

Likewise, in *Carter v. District of Columbia*, 795 F.2d 116 (D.C.Cir.1986), an excessive force case, the court held evidence of "other complaints", which consisted of different types of excessive force complaints, of police misconduct is relevant on the question of whether the municipality had a policy or practice of inadequately investigating these complaints because the municipality claim required plaintiffs to show that the municipality was on notice of claims of widespread brutality, but was indifferent to them. The Court held, although the "complaint evidence" is relevant, it must be introduced in a manner that avoids unfair prejudice to Defendants. *Id.*

In *Bordanaro v. McLeod,* 871 F.2d 1151 (1St. Cir.1989), citizens who were beaten up by police brought a civil rights action against the municipality, mayor and police chief. In affirming judgment in favor of the plaintiffs, the Court held evidence was sufficient to prove city officials were deliberately indifferent to the need for better recruitment, training and supervision or discipline of its

12

officers and that those inadequacies caused the injuries sustained by the citizens who were beaten up by officers after officers broke in their door so as to render municipality liable. *Id.* at 1156.  The Court found by evidence of numerous occasions, the department had a longstanding, widespread and facially unconstitutional practice of breaking down doors without a warrant when arresting a felon. *Id.*

Here, plaintiff alleged a pattern, practice and policy of excessive force by deputies of Orange County Sheriff's Office, including the arbitrary and capricious use of firearms by deputies when such use is not needed; the use of tasers on non-aggressive, non-threatening citizens, including juveniles, and of the multiple use of tasers on citizens who had already surrendered.  The Plaintiff has evidence of these claims and of the Sheriff's Office's lackadaisical attitude with respect to investigating these claims, as well as the Sheriff's Office policy of <u>always</u> exonerating the deputies involved.  Of equal importance, as with this case, Plaintiff will be able to provide sufficient evidence that the other complaints had merit.  Many of the approximately 182 complainants had witnesses to corroborate their complaints. **The fact that the Sheriff's Office, who was the sole investigatory agency of these complaints, discounted these witnesses testimony does not mean the complaints were without merit**. *See Larez v. City of L.A.,* 946 F.2d 630 (9th Cir.1991)(Evidence that police department procedures for investigating citizen complaints of excessive use of force by police officers almost never resulted in discipline and that there was a policy and custom of excessive force sufficient to find supervisory and municipal liability).

In fact, as to Plaintiff's complaint of the multiple use of the taser although he was not threatening anyone, and of being shot and killed although he was unarmed; had committed no crime and was not under arrest, Plaintiff has evidence and has produced evidence that Orange County

Sheriff's Office deputies have deployed the taser on citizens of Orange County on over 1,000 times in a span of merely three (3) to four (4) years.  Many of these citizens, like Ricky Mills, were doing nothing to justify being tased by the deputy and their complaints were not investigated. (See Exhibit "J" Aff'd of Williams and Exhibit "K" Aff'd of Whalen Of Plaintiff's Statement of Undisputed Facts of Dkt. 27 of Jackson)

Also, within the over 182 excessive force complaints attached to Plaintiff's Statement of Undisputed Facts (Dkt 27 of Jackson and Exhibit "A" of Plaintiff's Notice of Filing), there  are a multitude of complaints of the unjustified use of the taser, including citizens who complained that they had their hands in the air and had surrendered, or that they were tased multiple times while already subdued.  **In all of these cases, the deputy was always exonerated**. Clearly, Plaintiff has demonstrated an official attitude by the Sheriff's Office, one of indifference to the truth of these claims, and such an attitude bespeaks an indifference to the truth of these claims, and an indifference to the rights asserted by those claims and the citizens of Orange County.  *Fiacco,* 783 F.2d 319, 328 (2nd Cir.1986); *see also Larez v. City of L.A.,* 946 F.2d 630 (9th Cir.1991)(Evidence that police department procedures for investigating citizen complaints of excessive use of force by police officers almost never resulted in discipline and that there was a policy and custom of excessive force sufficient to hold chief of police and city liable).

In *Gold v. City of Miami*, 151 F.3d 1346 (11th Cir.1998), another case relied upon by the Defendant, and a case that is readily distinguishable from the instant case, Gold [the arrestee] brought a § 1983 action against the city in connection with his arrest for disorderly conduct. However, Gold admitted he presented no evidence of prior constitutional violations or false arrests involving Florida's disorderly conduct statute. Also, Gold presented no evidence of a single incident

14

in which a City police officer caused an injury by excessive force in handcuffing. *Id.* at 1351. The Court held, plaintiff must present <u>some</u> evidence that the municipality knew of need to train/or supervise and the municipality made a deliberate choice not to take any action. *Id.*

There are an abundant of disputed factual issues and reasonable inferences that the Sheriff's Office has demonstrated a "deliberate indifference" or "conscious choice" to not adequately train its deputies on the use of the taser and/or use of firearms on mentally ill citizens, or emotionally distraught citizens, to allow its deputies to arbitrarily and capriciously use the taser and firearm on non-violent and non-threatening citizens and to not modify its policy in the manner in which the taser is deployed, or mentally ill citizens are handled, or how the CIT is activated; or whether a CIT office should always be available; which amounted to a policy, practice or custom which caused Plaintiff's injuries from the taser and death from being shot multiple times. In fact, using the taser in situation such as the instant case as opposed to calling the CIT or a mental health counselor only escalated this situation, which ultimately led to the death of Ricky Mills. *Monell v. Dept. of Social Serv., of N.Y.,* 436 U.S. 658 (U.S.1978)

In fact, in response to a public outcry on the unmitigated and quick use of the taser by law enforcement, Police Departments across Orange County agreed to restrict the Taser stun gun. (<u>See</u> Exhibit "A" hereto of Dkt No. 36 of <u>Jackson</u>)  In response, Steve Jones, the sheriff's chief spokesman, said "the Sheriff's Office supports the police chief's actions but will not make any changes to its policy until the committee finishes it work." This is an admission by a party opponent under Fed. R. Civ. P. 801(d)(2)(A), and is evidence that area law enforcement agencies, including the Defendant, were aware that its officers and deputies were improperly using tasers. Thus, notwithstanding its knowledge of complaints of the manner in which tasers were being used in 2001,

2002, 2003, 2004 and 2005, and notwithstanding longstanding complaints pre-dating the subject incident, which caused other law enforcement agencies to change their policies, the Sheriff's Office disingenuously argues it was not on notice of problems with the manner in which its deputies were using tasers on citizens.  Clearly, based on the overwhelming number of times (approximately over a 1,000) tasers were used in a span of merely three  (3) to four (4) years on citizens by deputies, the multitude of citizen complaints filed against deputies from the use of the taser and the fact that other law enforcement agencies in the area have modified their policies with respect to the use of the taser, of which the Sheriff Office was aware of, there are factual issues as to a custom, policy or practice for a jury to decide.

Of equal importance, the Sheriff's Office contends it "had in place at the time of Mr. Mills' death, "A Professional Standard Division" to investigate citizen's complaints". Yet, this Professional Standard Division is not independent of the Sheriff's Office and there is no "independent citizen's review board" to review citizen complaints.  In fact, during this period time, Luis Gomez, a board member the Independent Citizen's Review Board who Plaintiff intends to call to testify at the trial, stated that "there is no independent citizen review board (CRB)." (See Exhibit "B" hereto of Dkt No. 36 of Jackson) The CRB depends on the investigation conducted by the sheriff's internal affairs unit and the CRB review mainly involves reading reports from internal affairs.  The CRB chair and vice chair are both appointed by the Sheriff and report to the Sheriff.  According to Mr. Gomez, "the CRB reviews complaints after internal affairs has already cleared deputies" and accused deputies rarely appear at the hearings. The board has no authority to subpoena witnesses, and citizens who actually file complaints are intimidated when they appear at CRB hearings. The CRB or the OCSO investigative division can hardly be called "independent" or "objective."

In anticipation of any argument that the statements made by Luis Gomez or David Porter, the reporter, in the Orlando Sentinel Newspaper are hearsay, the Eleventh Circuit has consistently held "a district court may consider a hearsay statement in passing on a motion for summary judgment if the statement could be "reduced to admissible evidence at trial." *Wright v. Southland Corp.*, 187 F.3d 1287 (11th Cir.1999); *H. Pashoian v. GTE Directories,* 208 F. Supp. 2d 1293 (M.D.Fla.2002); *Pritchard v. Southern Co. Serv.,* 92 F.3d 1130, 1135 (11th Cir.1996); *McMillian v. Johnson,* 88 F.3d 1573, 1584-85 (11th Cir.1996); *Church of Scientology Flag Serv., Org. Inc. v. City of Clearwater,* 2 F.3d 1514 (11th Cir.1993).  Here, the statements by Gomez and Porter will be "reduced to admissible evidence at trial" insofar as Gomez and Porter will be called to testify about the CRB, the manner in which complaints are handled and hearings are held, and the CRB's lack of "independent" relationship with the Orange County Sheriff's Office.

In *Larez v. City of L.A.,* 946 F.2d 630, 641-42 (9th Cir.1991), an excessive force case, the court held that statements made by a police chief to newspaper reporters were admissible at trial. Additionally, the court held that testimony from the reporters themselves concerning statements made would be admissible and would be the "best evidence" at trial as opposed to the articles. Likewise, Plaintiff intends "to reduce to admissible evidence at trial" the statements of Gomez and Porter by their testimony. Therefore, these statements should be considered in this response as they will be admissible at trial.  Also, in *Larez,* the court held evidence that police department procedures for investigating citizen complaints of excessive use of force by police officers almost never resulted in discipline and that there was a departmental policy or custom of resorting to the use of excessive force was sufficient to find supervisory and municipal liability. *Id.* at 647-648. The Court found

compelling the fact that "something has to be done on film for the department to buy a citizen's story" and "it was almost impossible for a police officer to suffer discipline as a result of a complaint lodged by a citizen." *Id.* This is precisely what Plaintiff has contended and has demonstrated by the evidence and therefore, there are factual issues as to the Sheriff's Office deliberate indifference to citizen complaints precluding summary judgment.

### C. **Defendant Failed To Plead In Its Answer Mills Has No Survivors Under The Wrongful Death Statute And Therefore Has Waived The Argument.**

Although Plaintiff vehemently disagrees with Defendant's narrow interpretation of "survivor" under the Wrongful Death Statute, as an Estate can be a survivor, prior to Marie Burks being appointed Personal Representative, Ora Pearl Mills (Ricky's Grandmother) was the PR; yet, due to her age and physical condition she turned the Estate over to Marie Burks. Ora Pearl Mills raised Ricky Mills. Ricky Mills lived with her off and on prior to his death. Burks testified Ricky could have been providing financial support to his grandmother before his death . (M. Burks @20-21)

Notwithstanding there is factual question as to whether Ricky was providing financial support to his grandmother before his death, and/or if she was a "survivor" under the Wrongful Death Statute, Defendant has waived this defense or avoidance. The Eleventh Circuit and the Florida Courts have emphatically held that failure to raise an affirmative defense or an avoidance or "any other matter constituting an avoidance or affirmative defense" in an answer constitutes a waiver of that defense. Jackson v. Seaboard Coast Line R.R. Co., 678 F.2d 992, 1012 (11th Cir.1982)(If a party fails to include an affirmative defense in the answer or to have it "included in the pretrial order of the district court, which supercedes the pleading," the defense is normally waived); Hargett v. Valley

18

Federal Sav. Bank, 60 F.3d 754 (11th Cir.1995)(If party omits defense of statute of limitations in

answer, such is not waived <u>if</u> litigant includes it in a pretrial order which supercedes pleading);

Troxler v. Owens-Illinois, Inc., 717 F.2d 530 (11th Cir.1983)(Affirmative defense not plead in

defendant's answer is waived; defense of statutory immunity recognized under "any other matter

constituting an avoidance or affirmative" defense under Fed.R.Civ.P.8(c)); <u>Day v. Liberty Nat. Life</u>

<u>Ins. Co.</u>, 122 F.3d 1012 (11th Cir.1997)(Holding, statute of limitations is an affirmative defense

which must be specifically pled, if not, it is waived). In fact, Federal Rule of Civil Procedure 8(c)

**Affirmative Defenses5,** unequivocally states:

> **In pleading to a preceding pleading, a party shall set forth affirmatively accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, waiver, and "any other matter constituting an avoidance or affirmative defense".**

In Defendant's answer, Defendant failed to raise the affirmative defenses or avoidances which it

seeks to assert in its motion for summary judgment, to wit, that Mills has no survivors or The Estate

is not a survivor, and therefore, that avoidance is effectively waived. <u>See</u> <u>Shook & Fletcher</u>

<u>Installation Co. v. Central Rigary & Contracting Corp.</u>, 684 F.2d 1383, 1386 (11th Cir.1982)(Failure

to raise affirmative defense of equitable estoppel by a pleading or in pretrial order resulted in waiver

of such defense).

Similarly, the Florida Courts, have likewise maintained "failure to raise an affirmative defense or

avoidance" in an answer is a waiver of that affirmative defense or avoidance. <u>Romelotti v. Hanover</u>

<u>Amgro Ins., Co.</u>, 652 So.2d 414 (Fla. 5DCA 1995)(Affirmative defense of lack of personal

jurisdiction is waived by failure to raise it in answer) "Defense" means any allegation raised by

defendant which, if true, would defeat or avoid plaintiff's claims. Martin County v. Edenfield, 609 So.2d 27 (Fla.1992).See also Triple T. Inc., v. Jaghorty, 612 So.2d 642 (Fla.4DCA 1993)**(Failure to affirmatively plead failure to comply with the statute waived the defense)**; Chillemi v. Rorabeck, 629 So.2d 206 (Fla.4DCA 1993)(Failure to plead defenses waives them); Palmer v. McCallion, 645 So.2d 131 (Fla.4DCA 1994)**(Failure to raise affirmative defense in answer barred reliance in subsequent motion to dismiss)**. Insofar as Defendant failed to raise the affirmative defenses or avoidances Plaintiff  (technically The Estate) "is not a survivor" or "Mills has no survivors" under the Wrongful Death Statute in its answer, Defendant is barred from relying on that defense or avoidance in its motion for summary judgment and therefore, Defendant's motion for summary judgment should be denied as a matter of law.

Confusing is Defendant's reliance on *Trianon Park Condo v. City of Hialeah*, 468 So.2d 912 (Fla. 1985), for the proposition arresting Ricky Mills was a "discretionary function" as to the training aspect of  Plaintiff's Wrongful Death Claim and thus immune as it has been decided after *Trianon* that Parker and Figueroa owed Plaintiff a duty of care to avoid inflicting serious bodily injury on him and killing him once they engaged in the "operational task" of subduing him. *Lewis v. City of Petersburg,* 260 F.3d 1260 (11th Cir. 2001) citing *Kasiser v. Kolb,* 543 So.2d 732 (Fla. 1989).3 In *Moore v. State FWC, 2003WL 22945735 (Fla.App. 1 Dist),* the Court held "discretionary policy-making or planning activities of governmental entities are immune from tort liability, yet immunity from tort liability is waived for negligent activities that are operational and for which a common law duty exists", such as effectuating or training to effectuate arrests or detentions.

### CONCLUSION

---

3 It is conceded Jack Mills failed to comply with 768.28 Notice Requirements.

Based on the forgoing, Plaintiff respectfully moves and requests this Court to deny Defendant's Summary Judgment.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on the 30th day of November 2009, I electronically filed the foregoing, with the Clerk of the Court, by using the CM/ECF system, which will send a Notice of Electronic Filing to all counsel of record.

S/ Frank T. Allen
FRANK T. ALLEN, ESQUIRE
Florida Bar No.: 0033464
**THE ALLEN FIRM, P.A.,**
605 E. Robinson Street
Suite 130
Orlando, FL 32801
Telephone: 407/481-8103
Telecopier: 407/481-0009