UNITED DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**MARIE BURKS, as Personal Representative
Of Rickey Mills, deceased and JACK MILLS**

       **Plaintiff,**

                    **CASE NO.:  6:08-CV-1568-ORL-28GJK**

**vs.**

**KEVIN BEARY, as Sheriff of the Orange County Sheriff's Office
DEPUTY SHERIFF CHESTER PARKER and
DEPUTY SHERIFF BRIAN FIGUEROA**

       **Defendants.**

_____/

**PLAINTIFF'S RESPONSE AND MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANTS' PARKER AND FIGUEROA
<u>MOTION FOR SUMMARY JUDGMENT</u>**

      Plaintiffs, MARIE BURKS, as Personal Representative of RICKY MILLS and JACK

MILLS files their response in opposition to Defendants', Deputy Chester Parker and Deputy

Brian Figueroa, Motion for Summary Judgment and states:

**I. <u>STANDARD FOR SUMMARY JUDGMENT</u>1**

      To be entitled to judgment as a matter of law, Defendants must show that Plaintiff failed

to produce evidence such that a reasonable jury could find that the amount of force used to arrest

Plaintiff was unreasonable and thus a violation of the Fourth Amendment's prohibition on the

use of excessive force by law enforcement officers.  *Graham v. Conner,* 490 U.S. 386 (1989)

All evidence and inferences drawn from the evidence must be in favor of the non-movant and if

Plaintiff presents evidence that reasonable people, in the exercise of impartial judgment, might

_____

1 Plaintiff incorporates the facts set forth in Response in Opposition to Summary Judgment of Beary in this

1

reach differing conclusions, the Defendants motion for summary judgment must be denied. *Priester v. City of Riviera Beach,* 208 F. 3d 919 (11th Cir. 2000). In *Beltram v. Shackleford, Farrior, et al.,* 725 F.Supp. 499, 500 (M.D.Fla.1989), this Court held, "This circuit clearly holds summary judgment should only be entered when the moving party has sustained its burden of showing the absence of a genuine issue as to <u>any</u> material fact when all the evidence is viewed in the light most favorable to the nonmoving party." Quoting *Sweat v. Miller Brewing Co.,* 708 F.2d 655 (11th Cir. 1983) Also, the Plaintiff's version of the facts is to be believed. *Id.*

## II. <u>EXCESIVE FORCE CLAIMS</u>

The Supreme Court has recently determined the manner in which courts are to proceed, when in an excessive force case brought under 43 U.S.C. 1983, government officials assert the defense of qualified immunity. *Saucier v. Katz,* 533 U.S. 194 (2001).  A court must "consider in proper sequence" the "requisites of a qualified immunity defense." *Id* . at 2155.  First, the court must determine, as a "threshold question", whether Plaintiff has shown a deprivation of a constitutional right. *Id.* at 2156.  If so, the court must then determine whether the right was clearly violated in a "particularized…sense:… the relevant, dispositive inquiry…is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *Katz,* 121 S.Ct. at 2156. Summary judgment must be denied any time there are material issues on excessive force claims, thereby denying officer his immunity from suit. *Id.*

### A. <u>The Facts Clearly Show The Conduct of Parker and Figueroa Violated Plaintiff's Four Amendment Right To Be Free Of Excessive Force</u>

The facts of this case taken in the light most favorable to Plaintiff establishes that Parker and Figueroa violated Plaintiff's constitutional rights. "The Fourth Amendment's freedom from

Response.

unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest." *Lee v. Ferraro*, 284 F.3d 1188, 1195 (11th Cir. 2002) (citing *Graham v. Conner*, 490 U.S. 386 (1989)).  "*Graham* dictates unambiguously that the force used by a police officer in carrying out an arrest must be reasonably proportionate to the need for that force, which is measured by the severity of the crime, the danger to the officer, and the risk of flight. *Lee,* 284 F.3d at 1198.  The officer's actions are measured by the standard of objective reasonableness. *Graham,* 490 U.S. at 397.  The reasonableness of the force used to effect a particular seizure, is determined by "carefully balancing…the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham,* 490 U.S. 396, 109 S.Ct. 1865 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8,  (1985)).  "[T]he force which is applied must be balanced against the need for that force." *Liston v. County of Riverside,* 120 F.3d 965, 976 (9th Cir. 1999); *Alexander v. City and County of S.F*, 29 F.3d 1335, 1367 (9th Cir. 1994). Here, there was no need to shoot Plaintiff four (4) times, particularly in this case where Plaintiff was unarmed and was not under arrest.

## 1. Nature and Quality of the Intrusion

It is clearly established the use of excessive force in carrying out an arrest constitutes a violation of the Fourth Amendment. *Graham v. Conner*, 490 U.S. 386 (1989); *Thornton v. City of Macon,* 132 F.3d 1395, 1400 (11th Cir.1998)(Qualified Immunity denied; evidence raised fact issue as to officer's use of excessive force precluded summary judgment).  First, the Court must assess the quantum of force used to arrest Plaintiff by considering "the type and amount of force inflicted." *Headwaters Forest Def. v. County of Humboldt*, 534 F.3d 801 (2001).  Here, Parker

tased Plaintiff multiple times and Parker and Figueroa shot Plaintiff four (4) times, once in the head, twice in the back, from a few yards away.

The force used in this case was obviously enough to cause grave physical injury and caused the death of Plaintiff.  After Plaintiff was shot, he died on the scene within minutes. According to OCSO's own policy, only during a "deadly force" situation was Parker and Figueroa justified in shooting Plaintiff. Since Plaintiff was unarmed, not under arrest, and was not harming anyone, the amount of force was excessive. The tasing, and shooting in this case, which was only to be employed during a deadly force situation, was excessive as a matter of law. *Pruitt v. City of Montgomery,* 771 F.2d 1475, 1479 (11th Cir.1985)("Deadly force standard in 11th Circuit is defined as force that has a substantial risk of causing death or serious bodily injury).

## 2.  Government Interests at Stake

The Court must measure the governmental interests at stake by evaluating a range of factors: they include (1) the severity of the crime at issue, (2) whether the suspect posed[d] an immediate threat to the safety of officers or others (3) whether he [was] actively, resisting arrest or attempting to evade arrest by flight, and any other exigent circumstances [that] existed at the time of the arrest. *Headwaters Forest*, 240 F.3d at 1198-99(quoting *Chew v. Gates,* 27 F.3d 1432, 1440-1 & n. 5 (1994)) These factors are a means by which the court can determine objectively 'the amount of force that is necessary in particular situation.' *Graham*, 490 U.S. at 396-97, 109 S.Ct. 1865.

### a. <u>Severity of Crime At Issue</u>

The character of the offense is often an important consideration in determining whether

the use of force was justified. *See Chew*, 27 F.3d at 1442 & n. 9; *Headwaters Forest*, 240 F.3d at

1204-1205 (same). *Thornton*, 132 F.3d at 1400.  In this case, Plaintiff had committed no crime,

nor was he ever charged with any offense.  In fact, Plaintiff was never arrested or placed under

arrest.  Plaintiff was never told that he was under arrest. The officers were supposedly at the

scene to investigate a call Plaintiff threatened himself and to assist Plaintiff who was mentally ill.

 It is undisputed Plaintiff was never ordered to drop the knife (Mills @ 82) and within a matter of

seconds he was tased (Mills @ 82) which is hardly enough time for an emotionally distraught

person to comply. After he was tased, he dropped the knife. (Mills @ 84).  Also, because Florida

does not recognize attempted suicide or threats to commit suicide as a crime, *Krischer v. Melver*,

697 So.2d 97, 100 (Fla. 1997), the "severity of the crime at issue" factor favors Plaintiff.

Parker and Figueroa claimed they shot Plaintiff "because Plaintiff was assaulting Jack

Mills. However, Mills dispute and rebuts these contentions by testifying Plaintiff had dropped

the knife, was unarmed, and was not attacking him, when Parker and Figueroa shot Plaintiff

(Mills @ 82-84). Jimmy Lee Jones testified he did not see a knife anywhere in the vicinity of

Ricky Mill's body. (J. Jones @ 30) Interestingly, Defendants conveniently and purposely failed

to file the deposition transcripts of Jack Mills and Jimmy Lee Jones with the Court. Yet,

inconsistencies, contradictions and inferences which are to be drawn in Plaintiff's favor with

respect to Defendants' stated reasons for shooting Plaintiff precludes summary judgment.

*Thornton v. City of Macon*, 132 F.3d 1395 (11th Cir. 1998); *Adickes v. SH Kress & Co.,* 398 U.S.

144, 158-59 (1970)(Evidence of non-movant is to be believed and all inferences are to be drawn

in his favor)

In addition, when Ricky opened the door, although he had the knife, he was not

threatening the deputies, or anyone else. He was simply crouching down, holding the knife and looking at the floor. (R. Mills @ 77-78) At that point, he was tased multiple times and he dropped the knife. (J. Mills @ 84, 85 & 119)  *Deorle v. Rutherford,* 272 F.3d 1272, 1281 (9th Cir. 2000).  Also, Parker never told Ricky to "drop the knife" before deploying the taser multiple times which was objectively unreasonable under the circumstances. (R. Mills @ 79, 82), especially since Parker and Figueroa were informed Ricky was not being violent when they arrived on the scene and Ricky was threatening no one at that time. (J. Mills @ 70-71, 94-95, 130-131; C. Parker @ 9) In fact, the purpose of Defendants presence was to help Plaintiff who was potentially suicidal. (C. Parker @ 8)

Additionally, the OCSO has a Crisis Intervention Team. There was insufficient time for the CIT or a CIT officer to arrive and handle this matter.  However, Parker and Figueroa failed to even attempt to call or activate the CIT. *Mercado v. City of Orlando*, 407 F.3d 1152, 1158 (11th Cir. 2005)(Armed potentially suicidal citizen; The officers were aware that alternative actions, such as utilizing a crisis negotiation team, were available means of resolving the situation)  The existence of a genuine issue of material fact of whether there was sufficient time for the crisis negotiation team to arrive must be resolved against Defendants, this is especially true in light of the fact Plaintiff was alone in his room, and not threatening anyone. *Id. see* also *Anderson v. Libby Lobby, Inc.,* 477 U.S. 242, 255 (1986) Since Plaintiff was neither committing a crime against anyone or charged with any crimes, the degree force used under these circumstances was unreasonable when compared to the severity of the crime at issue, and due to the conflicts in the evidence and contradictions from Defendants,2 summary judgment should be denied.

---

2 The testimony of Baker, Hall, Parker and Figueroa contract each other and are grossly inconsistent.

### b.  <u>Plaintiff Posed No Threat to the Safety of Officers or Others</u>

"A simple statement by an officer that he fears for his safety or the safety of others is not enough; there must be objective factors to justify a concern. In short, an officer's use of force must be objectively reasonable based on his contemporaneous knowledge of the facts." *Deorle v Rutheford,* 272 F.3d 1272 (9th 2001) In this case, Plaintiff was in his room alone (J. Mills @ 70). Defendants were aware of this fact as Jack Mills informed them. (C. Parker @ 8) Ricky was not threatening anyone, nor had the officers been informed that he had threatened to harm to anyone. (Mills @ 70-71; M. Jones @ 18-19)  Once Plaintiff opened the room door, Parker and Figueroa observed Plaintiff totally nude, crouching in the doorway, with the knife pointed to the floor (Mills @ 82-84) He was not being aggressive, He was not being violent, He was not swinging the knife, He was not stabbing at anyone, He was not being belligerent, He was not attempting to escape or flee; he was simply crouching on the floor distressed (Mills @ 130-131)

Besides the lack of objective evidence that Parker or Figueroa feared for their safety, feared for the safety of the others, or that Plaintiff objectively posed a threat, the fact that an individual simply has a dangerous instrument in their hand fails miserly as a basis to employ force under *Graham*. **The record is absolutely barren of any objective evidence, allegations or assertions the officers feared for their safety when Plaintiff was tased multiple time and then shot.**

In *Sampler v. City of Atlanta,* 846 F.2d 1328 (11th Cir.1988), the Eleventh Circuit denied qualified immunity and held summary judgment was improper were an officer who was much bigger than the Plaintiff shot and killed the Plaintiff when the Plaintiff pulled a 3-inch pocket knife out at officer who was much bigger than plaintiff; held, Summary judgment improper, jury

could infer that officer used excessive force in shooting plaintiff. *Id.* Here, there were two (2) armed police officers, with asps, and pepper spray, who were bigger than Ricky Mills and who were at arm's length of him prior to and immediately after he was tased multiple times. (J. Mills @ 79, 82, 130-131) Parker and Figueroa could have easily subdued Ricky Mills at that point.

Although the cases relied upon by Defendants in their Motion for Summary Judgment are distinguishable from this case, the facts of those cases actually supports Plaintiff's claims here that the force used on him was excessive.  For instance, in *Bell v. Irwin,* 321 F.3d 637 (7th Cir. 2003), Plaintiff was armed with several knives, drove his wife from the home, refused to emerge or admit the police (or to come out) for discussion, held a knife to his throat while threatening suicide, threatened to kill any officer who entered the home, verbally threatened to kill himself to officers, was aggravated by the consumption of alcohol and made a move towards a propane tank with a lighter. Additionally, officers had been told Plaintiff had attempted to suicide before and a background check revealed Plaintiff had a history of violence and weapon charges.

In this case, Plaintiff never threatened anyone and he was confined to his room alone. He never threatened the officers verbally and merely told them he didn't want to talk with them and he was in bed. (J. Mills @ 75-76) He was not threatening anyone prior to being tased and was unarmed when he was shot. (J. Mills @ 79, 82, 130-131) Jimmy Lee Jones, another resident, testified no knife was near or around Ricky Mills' body. Also, unlike in *Bell,* Plaintiff did not threaten to kill any officer; He did not verbally threaten to kill himself to officers; He did not throw knives at officers or into a wall; He did not have a history of violence; He had never attempted suicide before; He was not drunk from alcohol and He was not trying to ignite a propane tank, or trying to do anything to jeopardize the safety of others. In addition, in *Bell*, the

officers actually tried to negotiate and continued even after *Bell's* father arrived and implored

him to cooperate. *Id* at 638-639. Also, in *Bell*, the Plaintiff was a moving target and was moving

in the direction of the officers when he was shot.

Here, Plaintiff was crouching quietly on the floor when he was tased multiple times and

the officers never told him to drop the knife before tasing him and never told him to stop before

shooting him. Under the circumstances of *Bell*, the police officers were justified in shooting *Bell*.

The facts and circumstances in *Bell* differ significantly from this case.

Likewise, in *Wood v. City of Lakeland*, 203 F.3d 1288 (11th Cir. 2000), when the officers

arrived at the scene, they were informed that they were faced with a known drug abuser, who had

threatened to commit, and who had attempted to commit suicide in the past.  They were informed

that Plaintiff had already cut his wrists with box-cutter and when they entered the residence, they

observed blood on the sidewalk outside as well as throughout the house.  When Plaintiff was told

to drop the knife, he hurled obscenities towards the officers and "slid off a dresser real quick

with his momentum forward" towards the officers with box-cutter still in hand." *Id* 1292-1293.

Unlike in *Wood,* Plaintiff in this case was not a drug abuser when he was shot and

had not attempted suicide in the past.  The officers did not see any cuts on Plaintiff's wrist or

blood anywhere.  He was not screaming, yelling or being aggressive towards officers as in

*Wood*.  Also, in *Wood*, like in *Bell,* the Plaintiff made aggressive and assertive movements

towards police officers with a weapon in hand.  Here, Plaintiff made no such movements.  In

fact, the court in *Wood* held, "Defendant made a reasonable split-second call, in light of Thomas'

volatile, emotional and aggressive state, to use deadly force in order to prevent imminent death

or great bodily harm to himself or another."  Here, it is undisputed Plaintiff was not aggressive,

violent or threatening before he was tased multiple times and witnesses have testified he was not armed and no knife was near his body when he was shot and killed.

Parker and Figueroa cannot cause a situation to escalate by failing to activate the CIT; tasing a mentally ill citizen multiple times and then shooting the person while they are running away terrified and confused. Remember, Ricky did not run or do anything until *after* he was tased. In *Ludwig v. Anderson,* 54 F.3d 465 (8th Cir. 1995), the Court held when person seized is not a "criminal suspect", has committed no crime when police approached, and is provoked by police escalation of situation, "importance of the governmental interest alleged to justify intrusion is diminished"; whether plaintiff was emotionally disturbed was material to reasonableness of officer's actions; summary judgment not proper where there are conflicting evidence as to if officers reasonably believed plaintiff posed serious risk of harm so as to use deadly force and where there were eight officers on the scene, plaintiff had only a knife, nearest bystander was 150 feet away and there were factual inconsistencies.

### c. <u>Plaintiff Was Not Actively Resisting Arrest or Attempting to Evade</u>

It is undisputed Plaintiff was not actively resisting arrest or attempting to evade arrest by flight. First, he was never under arrest, or told he was under arrest. Plaintiff certainly was not trying to resist arrest and was not attempting to evade arrest when he was tased multiple times.

Because Plaintiff was not attempting to resist arrest and was not attempting to evade arrest by flight or to run, less-intrusive and less-lethal tactics were reasonably available and could have easily been employed by Defendants. Although the use of force must be judged on a case-by-case basis "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight" *Graham v. Conner,* 490 U.S. 386 (1989), the facts as objectively

reviewed abundantly demonstrates Parker's and Figueroa's use of force on Plaintiff was clearly unreasonable.  To this regard, Plaintiff was confined to his room, alone. When he opened the door, he was crouching down, with the "little knife" pointed at the floor. He was not trying to rise from the floor and flee or run.  He was not being aggressive, violent or threatening. The officers were all armed with pepper spray and were carrying asps. The CIT could have been summoned to the scene. There was no immediate need to subdue Plaintiff before CIT was called or arrived, or before trying to talk with him face-to-face. Nothing in the record suggests Parker or Figueroa considered other, less dangerous methods of subduing Plaintiff, than tasing him multiple times and shooting him. *See Headwaters Forest Def. v. County of Humboldt,* 240 F.3d 1185, 1198 (9th Cir.2000)(holding, before deploying pepper spray, "police were required to consider [w]hat other tactics if any were available to effect arrest").

### 3.  Weighing the Conflicting Interests

Whether Parker tasing Plaintiff multiple times and then shooting him and whether Figueroa shooting  Plaintiff was objectively reasonable requires the Court to consider whether the degree of force was necessary, *See Liston v. County of Riverside,* 120 F.3d 965, 976 (9th Cir. 1997), in other words, whether the degree of force was warranted by the governmental interests at stake. *See Graham,* 490 U.S. at 396, 109 S.Ct. 1865. Given the circumstances here—Plaintiff was confined to room, alone; two (2) larger officers where at the door armed with firearms, tasers, asps and pepper spray; the availability of the CIT; Plaintiff was not threatening anyone, he was not trying to flee or escape, the inconsistencies in the stated reasons for shooting Plaintiff; the alleged victim's assertion of the absence of any physical assault; Parker attempted to talk face-to-face through a closed door for only a minute; Plaintiff was never warned he would

11

be tased or shot, Plaintiff was never told to drop the knife, and Plaintiff was crouching on the floor—they are insufficient by any objective measure to justify the force deployed, to wit, tasing Plaintiff multiple times  (when he was not threatening anyone) and shooting Plaintiff multiple times (when he was unarmed) simply because he running away and did not want to talk to law enforcement. *Deorle,* 272 F.3d 1282.

A review of the evidence objectively demonstrates there was no governmental interest at stake.  Plaintiff was not attempting to harm any officer, he was not attempting to harm the public, he was not involved in the commission of a felony or serious crime, in fact, he was not even actively trying to harm himself when he was tased. It is axiomatic, not hind-sight 20/20 guessing, that problems posed by and tactics to be used against emotionally distraught citizens are different from those involved in law enforcement efforts to subdue armed and dangerous criminals who have recently committed a serious offense. *Deorle,* 272 F.3d 1283.  In the case of mentally unbalanced or emotional distraught persons, the use of officers and others trained in the art of counseling is ordinarily advisable, where feasible and may provide the best means of ending a crisis. *Alexander v. City and County of S.F.,* 29 F.3d 1355, 1366 (9th Cir. 1994)(holding police used excessive force, considering all the circumstances, in "storming the house of a man whom they knew to be mentally ill…recluse who had threatened to shoot anybody who entered"). There are factual questions as to whether the CIT could have been or should have been called and whether Parker and Figueroa caused a situation to escalate and then unjustifiably used deadly force to end the situation.

**B.    Defendants Violated Clearly Established Law and Are Not Entitled to Qualified Immunity**

For a constitutional right to be clearly established, it "must be sufficiently clear [so] that a

reasonable official would understand what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640 (1987*); Willingham v. Loughnan,* 321 F.3d 1299, 1301 (11th Cir. 2003)  It is clearly established that the use of excessive force in carrying out an arrest or detention constitutes a violation of the Fourth Amendment. *Graham,* 490 U.S. 386 at 394. The law is clearly established since 1985 that using deadly force in a non-deadly force situation violates the Fourth Amendment. *Tennessee v. Garner,* 1 U.S. 1, 105 S.Ct. 1694 (1985); *Wood v. City of Lakeland,* 203 F.3d 1288, 1292 (11th Cir. 2000) *Medoza v. Block,* 27 F.3d 1357, 1361 (9th Cir. 1994)(quoting *Casteel V. Pieschek,* 3 F.3d 1050, 1053 (7th Cir. 1993)

Furthermore, this is one of cases that lie "so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to the official"……*Lee v. Ferraro,* 284 F.3d 1188, 1199 (11th Cir. 2002). Here, Parker knew he was violating Plaintiff's constitutional rights when he tased him multiple time for simply crouching in the doorway holding a knife. And, both Parker and Figueroa knew they were violating Plaintiff's constitutional rights when they shot an unarmed citizen four (4) times in the back and in the head.    The Eleventh Circuit has repeatedly held that police officers cannot use force that is "wholly unnecessary to any legitimate law enforcement purpose." *Ferraro,* 282 F.3d at 1199(holding that slamming a handcuffed arrestee's head against a vehicle violated the Fourth Amendment); see *Slicker v. Jackson,* 215 F.3d 1225, 1227 (11th Cir. 2002)(denying qualified immunity for an officer who kicked an arrestee already in handcuffs); *Priester v. City of Riviera Beach,* 208 F. 3d 919, 926-27 (11th Cir. 2000)(denying qualified immunity to officers who allowed a police dog to attack an arrestee who was already on the ground).

Parker knew tasing a non-threatening mentally ill citizen was unnecessary. Parker and

13

Figueroa knew shooting Plaintiff multiple times was objectively unreasonable and unlawful under these circumstances and a reasonable officer in the same situation would have known and believed the force used was excessive. *Creighton,* at 483 U.S. 635 (1987)

Contrary to Defendant's assertion, this case is easily distinguishable to *Kesinger v. Herrington,* 381 F.3d 1243 (11th Cir. 2004). In *Kesinger,* Kesinger was obviously a deranged and crazed man, was seemingly trying to commit suicide by causing a motor vehicle to hit him on a busy interstate highway. It is obvious Kesinger posed an immediate threat of harm, not only to himself and to Herrington, but to dozens of other motorists that morning. Kesinger also behaved in an aggressive and belligerent manner. He turned and moved quickly toward Herrington, angry and ready to fight with his arms raised. He claimed to be Jesus Christ, and stated he was going to die that day, and Herrington was going to die also. When he fired at Kesinger, Herrington thought that Kesinger had shot at him first. Also, any disputed facts were not material. *Id.*

Whether Ricky was armed and attacking Jack Mills is not only material but fundamental to the determination of qualified immunity in this case. Plaintiff's witnesses maintain Ricky was not threatening anyone; was not a threatening any officers (Parker admitted this fact); was not being belligerent; was not armed when he was shot. Simply put, his conduct was not remotely close to that of *Kesinger* and thus, neither Parker nor Figueroa are entitled to qualified immunity.

In *Deorle v. Rutherford,* 272 F.3d 1272 (9th Cir. 2001), a case that is instructive as to the analysis of this case, Defendant shot Plaintiff in the face with a "less-lethal" lead-filled "beanbag round", which removed Plaintiff's eye and left lead implanted in his skull. Plaintiff was

14

emotionally disturbed and was walking at a "steady gait" in Defendant's direction. Plaintiff had

not attacked anyone or even touched anyone, had generally obeyed orders given but not all, had

not committed any serious crime and Plaintiff was not warned he would be shot.

  In denying qualified immunity to Defendant, the Court in *Deorle* held, at the time officer

fired lead-filled, beanbag round at emotionally disturbed suspect, governmental interest in using

force capable of causing serious injury was clearly not substantial, where suspect had not harmed

or attempted to harm anyone, suspect was contained and had not tried to flee and trained

negotiators were expected at the scene. *Id.* Officer's use of lead-filled beanbag round to shoot

person armed with a bottle, on his own property, violated suspect's right to be free from

unreasonable seizures, where suspect's conduct constituted disturbing peace, many officers were

present, suspect had generally complied with officer's prior commands and officer failed to give

suspect any warning that he would be shot. *Id.* No reasonable police officer could have believed

it was reasonable to shoot suspect who had committed no serious offense, was mentally

disturbed, had been given no warning of imminent use of such significant force, posed no risk of

flight and presented no objectively reasonable threat of safety of officer or others, and therefore

officer was not entitled to qualified immunity against suspect's 1983 excessive force claim. *Id.*


  Here, Plaintiff was even less threatening and volatile than the Plaintiff in *Deorle.* At one

point, the Plaintiff in *Deorle* brandished an ax at officers, screamed at officers, threatened to

"kick their asses" and told them to kill him. *Id.*3 "Even when an emotionally disturbed individual

---

3 Even the dissenting Judge in *Deorle* relied on the aggressive conduct of the Plaintiff, including screaming at officers, swinging a board, picking up an ax and crossbow, possession of lighter fluid and advancement towards the officer while threatening to kick his ass as the factors for his dissent. None of those facts or circumstances existed in this case.

is "acting out" and inviting officers to use deadly force to subdue him, the government interest in using such force is diminished by the fact the officers are confronted, not with a person who has committed a serious crime against others, but with a mentally ill individual", *Id.* or in this case, an emotionally distraught individual. Clearly, it was objectively unreasonable for Parker to tase Plaintiff multiple times and it was objectively unreasonable for Parker and Figueroa to shoot Plaintiff in this case, particularly where he was unarmed and simply trying to avoid talking to them and qualified immunity should be denied.

It is undisputed neither Parker nor Figueroa ever warn Ricky to drop the knife. Once Ricky exited the door and Parker saw the knife; tased him (C. Parker @ 24) Jack Mills swore Ricky was never warned or told to drop the knife, and neither Parker nor Figueroa warn him that they would shoot him. The absence of a warning or an order to halt has consistently been a factor that influences a court's decision in excessive force cases. *Deorle,* 272 F.3d 1272, 1283. Appropriate warnings comport with actual police practice. *Id.* Warnings should be given, when feasible, if the use of force may result in serious injury and giving a warning or failure to do so is a factor to be considered in applying the *Graham* balancing test. *Id. See Brewer v. City of Napa,* 210 F.3d 1093, 1094-1095 (9th Cir. 2000)(police gave warning before setting dog on suspect); *Vera Cruz v. City of Escondido,* 139 F.3d 659, 663 (9th Cir. 1997)(holding the same); *Headwaters Forest Def. v. County of Humboldt,* 240 F.3d 1185, 1193-94 (9th Cir. 2000)(police warned protesters before use of pepper spray)*; Vathekan v. Prince George's Co.,* 154 F.3d 173, 175-80 (4th Cir. 1998)(law is clearly established in 1995 it is objectively unreasonable for a police officer to fail to give verbal warning before releasing police dog to seize someone); *Ludwig v. Anderson,* 54 F.3d 465 (8th Cir. 1995) (failure of police to give warning was factor

indicating force used was unreasonable since there was evidence that such a warning would have been feasible).

In this case, the feasibility and desirability of a warning was obvious. There was ample time to warn Plaintiff he would be tased if he did not place the knife down and he would be shot if he did not stop running; and no objective justifiable reason whatsoever existed not to do so. Plaintiff was not trying to flee an arrest and was not to threatening harm to anyone.  Also, considering the inconsistencies in Parker's and Figueroa's stated reasons for shooting Plaintiff and the lack of any effort to speak with Plaintiff face-to-face it was plainly unreasonable to tase Plaintiff and shoot Plaintiff multiple times without at least warning him. Every police officer should know and Parker and Figueroa knew that it is objectively unreasonable to shoot an tase a non-threatening individual several times and shot that person four (4) times, including in the head from ten (10) feet away (C. Parker @ 36), who is emotionally distraught, has been given no warning of the imminent use of such force, poses no risk of flight, presents no objectively reasonable threat to the safety of others or officers and according to witnesses not employed by or working for the OCSO, was not involved in a deadly-force situation. As such, Parker and Figueroa should certainly be denied qualified immunity.

### III.  <u>NEGLIGENCE CLAIMS</u>

At the outset, Section 768.28 is actually a waiver of sovereign immunity in tort actions. In fact, 768.28 (9)(a) specifically states:

> **No officer, employee, or agent of the state or of any of its subdivisions shall be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function, unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful**

**disregard of human rights, safety, or property.**

Section 768.28 (9)(a) further states that the exclusive remedy is shall against the governmental

entity (The OCSO) unless **"such officer, employee, or agent acted in bad faith or with**

**malicious purpose or in a manner exhibiting wanton and willful disregard of human rights,**

**safety…."** Simply put, despite Defendants' argument, Parker and Figueroa may be personally

liable if it is determined by a jury that they acted in "bad faith" or "with malicious purpose" or

"in a manner exhibiting wanton and willful disregard of human rights or safety".

      This is merely an "alternative theory of liability". To this regard, Parker and Figueroa are

being sued in there "individual capacities" and they answered the complaint in such. Here, Ricky

Mills was tased multiple times by Parker although he was not threatening Parker, Figueroa or

anyone else when he initially opened the door to his room. He was simply holding a "small

knife" (as described by Jack Mills). After he was tased, Ricky attempted to run and avoid law

enforcement because he did not want to talk with them, and for this, he was shot four (4) times

and killed. According to Plaintiff's witnesses, Ricky was not armed, he was not threatening

anybody, he was not attacking Jack Mills; there was no knife found in the vicinity of his body;

he was merely avoiding speaking with Parker and Figueroa.  Clearly, a reasonable jury could

look at the facts of this case and determine Parker and Figueroa acted  **in bad faith or with**

**malicious purpose or in a manner exhibiting wanton and willful disregard of human rights**

**and safety….** of Ricky Mills, and therefore, Defendants are not entitled to summary judgment.

*Willinham v. City of Orlando,* 929 So.2d 43, 48 (Fla. 5DCA 2006).

      Furthermore, Plaintiff's negligence claims are significantly more than merely a

"negligence use of excessive force" claim. To this point, either the Defendants did not read the

18

entire Count or they simply ignored the allegations therein. Thus, instead of wasting the Court's time regurgitating the entire Counts V and VI, Plaintiff merely request the Court to read them.

Although Plaintiff vehemently disagrees with Defendant's narrow interpretation of "survivor" under the Wrongful Death Statute, as an Estate can be a survivor, prior to Marie Burks (Ricky's Aunt) being appointed Personal Representative, Ora Pearl Mills (Ricky's Grandmother) was the PR; yet, due to her age and physical condition she turned the Estate over to Marie Burks. Ora Pearl Mills raised Ricky Mills. Ricky Mills lived with her off and on prior to his death.  Burks testified Ricky could have been providing financial support to his grandmother before his death . (M. Burks @20-21)

Notwithstanding there is factual question as to whether Ricky was providing financial support to his grandmother before his death, and/or if she was a "survivor" under the Wrongful Death Statute, Defendant has waived this defense or avoidance. The Eleventh Circuit and the Florida Courts have emphatically held that failure to raise an affirmative defense or avoidance or "any other matter constituting an avoidance or affirmative defense" in an answer constitutes a waiver of that defense. Jackson v. Seaboard Coast Line R.R. Co., 678 F.2d 992, 1012 (11th Cir.1982)(If a party fails to include an affirmative defense in the answer or to have it "included in the pretrial order of the district court, which supercedes the pleading," the defense is normally waived); Hargett v. Valley Federal Sav. Bank, 60 F.3d 754 (11th Cir.1995)(If party omits defense of statute of limitations in answer, such is not waived if litigant includes it in a pretrial order which supercedes pleading); Troxler v. Owens-Illinois, Inc., 717 F.2d 530 (11th Cir.1983)(Affirmative defense not plead in defendant's answer is waived; defense of statutory immunity recognized under "any other matter constituting an avoidance or affirmative" defense under Fed.R.Civ.P.8(c)); Day v. Liberty Nat. Life

Ins. Co., 122 F.3d 1012 (11th Cir.1997)(statute of limitations is an affirmative defense which must be specifically pled, if not, it is waived). In fact, Federal Rule of Civil Procedure 8(c) **Affirmative Defenses5,** unequivocally states:

> **In pleading to a preceding pleading, a party shall set forth affirmatively accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, waiver, and "any other matter constituting an avoidance or affirmative defense".**

In Defendants' answers, Defendants failed to raise the affirmative defenses or avoidances which it seeks to assert in its motion for summary judgment, to wit, that Mills has no survivors or The Estate is not a survivor, and therefore, that avoidance is effectively waived. See Shook & Fletcher Installation Co. v. Central Rigary & Contracting Corp., 684 F.2d 1383, 1386 (11th Cir.1982)(Failure to raise affirmative defense of equitable estoppel by a pleading or in pretrial order resulted in waiver of such defense).

Similarly, the Florida Courts, have likewise maintained "failure to raise an affirmative defense or avoidance" in an answer is a waiver of that affirmative defense or avoidance. Romelotti v. Hanover Amgro Ins., Co., 652 So.2d 414 (Fla. 5DCA 1995)(Affirmative defense of lack of personal jurisdiction is waived by failure to raise it in answer) "Defense" means any allegation raised by defendant which, if true, would defeat or avoid plaintiff's claims. Martin County v. Edenfield, 609 So.2d 27 (Fla.1992).See also Triple T. Inc., v. Jaghorty, 612 So.2d 642 (Fla.4DCA 1993)(**Failure to affirmatively plead failure to comply with the statute waived the defense**); Chillemi v. Rorabeck, 629 So.2d 206 (Fla.4DCA 1993)(Failure to plead defenses waives them); Palmer v. McCallion, 645 So.2d 131 (Fla.4DCA 1994)(**Failure to raise affirmative defense in answer barred reliance in**

**subsequent motion to dismiss**). As Defendant failed to raise the affirmative defenses or avoidances

Plaintiff (technically The Estate) "is not a survivor" or "Mills has no survivors" under the Wrongful

Death Statute in its answer, Defendant is barred from relying on that defense or avoidance in its

motion for summary judgment and therefore, Defendant's motion for summary judgment should be

denied as a matter of law.

## CONCLUSION

Plaintiff,    **MARIE BURKS, as Personal Representative Of Rickey Mills,** for the foregoing

reasons,  respectfully asks this Honorable Court to deny Defendants' Motion for Summary Judgment.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on the 30th day of November 2009, I electronically filed the

foregoing, with the Clerk of the Court, by using the CM/ECF system, which will send a

Notice of Electronic Filing to all counsel of record.

S/ Frank T. Allen
FRANK T. ALLEN, ESQUIRE
Florida Bar No.: 0033464
**THE ALLEN FIRM, P.A.,**
605 E. Robinson Street
Suite 130
Orlando, FL 32801
Telephone: 407/481-8103
Telecopier: 407/481-0009

21